### H. C. SHERRILL v. AMERICAN TRUST COMPANY.

(Filed 27 November, 1918.)

1. **Banks and Banking — Bills and Notes — Ultra Vires Acts — Statutes— Inland Bills—Drafts—Negotiable Instruments.**

   Where a draft drawn to the maker's order and, having been endorsed by another, is accepted at a bank, and then purchased, in due course, before maturity, by an innocent purchaser for value, the bank may not resist payment upon the ground that the transaction was *ultra vires*, and not within the authority of its charter, authorizing it to accept bills, notes, commercial paper, etc., for it comes within the statutory definition of an inland bill of exchange, Revisal, secs. 2276, 2279, and may be treated as a bill or note, at the option of the holder.

2. **Banks and Banking—Bills and Notes—Ultra Vires Acts—Due Course.**

   The purchase by a bank of a draft drawn to the maker's order and endorsed by another is not foreign to the purposes of its charter authorizing it to accept bills, notes and other negotiable paper, conceding it not to be within the powers expressly conferred, and the bank is liable thereon to its innocent purchaser for value.

3. **Banks and Banking—Bills and Notes—Ultra Vires Acts—Consideration— Retained—Due Course—Innocent Purchaser.**

   The defense of *ultra vires* by a bank to its liability upon a draft payable to the maker's order, sold to an innocent third person for value, where the bank has retained the purchase money, without offer to restore it, is untenable, there being nothing in the transaction that is either illegal or against public policy.

APPEAL by defendant from *Harding, J.,* at the October Term, 1918, of MECKLENBURG.

This is an action to recover of the defendant bank on two drafts. The facts are as follows: I. C. Lowe drew a draft, payable to his own

order in ten days, addressed to Walter Lambeth, which the latter accepted. Lowe then endorsed this draft in blank to the bank, and the bank discounted it, advancing to Lowe the money thereon. Lowe at the same time drew a similar draft, except addressed to the bank, also endorsed in blank by Lowe, and the bank accepted this draft, discounted it, and advanced to Lowe the money thereon. Both of these instruments were subsequently endorsed and assigned by the bank to the plaintiff, a purchaser for value in due course and without notice of any defects other than such notice, if any, as may be ·charged to him by the terms of the bank's charter and the laws of this State. When demand was made on the bank for payment, payment was refused on the alleged ground that neither the charter nor the statutes in force in this State conferred upon the bank authority to deal in negotiable instruments of the types described, called in banking circles "acceptances."

The charter of the defendant contains the following provision: "The said corporation shall have the right to do a general banking business, to receive deposits, to make loans and discounts, to obtain and procure loans for any person, company, partnership, or corporation, to invest its own money or the money of others, to lend and invest money in or upon the security of mortgage, pledge, deed, or otherwise, on any lands, hereditaments or personal property, or interest therein of any· description, situate anywhere; to lend money upon, or purchase, or otherwise accept, bills of lading or the contents thereof, bills, notes, choses in action, or any and all negotiable or commercial papers, or any crops of produce whatever, and what is known as cash credits, or any stock, bullion, merchandise, or other personal property, and the same to sell or in anywise dispose of, and to charge any rate of interest on such loans not exceeding the rate allowed by law."

Judgment was rendered in favor of the plaintiff, and the defendant excepted and appealed.

*C. H. Gover* for plaintiff.
*Whitlock & McLain* for defendant.

ALLEN, J. There are three grounds on which the plaintiff is entitled to recover:

1. The papers on which the action is brought come directly within the definition of an inland bill of exchange (Revisal, secs. 2276 and 2279), but which could be treated as a bill or note at the option of the holder, the drawer and drawee being the same person (Revisal, sec. 2280), and the charter of the defendant expressly authorizes it to accept "bills, notes, choses in action, or any and all negotiable or commercial papers."

2. The transaction is one not foreign to the purposes of the charter of the defendant, if not strictly within the powers conferred, and the plaintiff is a purchaser for value without notice.

"If the execution or endorsement of a negotiable instrument by a corporation is obviously foreign to the purposes of its charter, such an instrument is void into whosoever's hands it may come, for every person is chargeable with notice of its *ultra vires* character; but if a corporation is of such character that it may have occasion to execute or to take and endorse such instruments in the conduct of its business, and it accepts a bill or executes a note, or endorses a bill or note, for a purpose that is foreign to its objects, as where it gives its paper as an accommodation or in payment for property which it has no authority to purchase, the instrument will be binding in the hands of a purchaser for value and without notice." Clark Corp., 176.

3. The defendant having received the money of the plaintiff by the acceptances, and now holding it as its own, without offer to return it, and there being nothing in the transaction that is illegal or against public policy, the defendant cannot avail itself of the defense of *ultra vires.*

"Public policy requires that corporations should be confined strictly within the limits of their charters, and should not be allowed to exercise powers beyond those expressly conferred that would be hurtful to the public interest. But where corporations have exercised powers incidental to those conferred and in furtherance of the general objects of the corporation, although the subject of the contract may not be within any express right conferred, they will be estopped from denying that they had authority to make such contracts. Good faith to third parties who deal with such corporations and who may have no accurate knowledge of the extent of their powers under their charters requires the adoption of this salutary rule. This rule has its foundation in the plainest principles of natural justice. When such corporations have received the benefit of a contract, if there is nothing in it that is contrary to public policy, there can be no just reason why they should not be required to perform it." *Chicago Bld. Soc. v. Crowell,* 65 Ill., 459.

"But again, if it be conceded that the defendant had no power to enter into the contract of sale in this case and bind the company to perform the obligations assumed, viewed as a mere question of corporate power, yet having undertaken to do so, and having received the full consideraion agreed to be paid by the plaintiff, and he having fulfilled his entire contract they cannot now be permitted to set up that excess of authority to excuse them from that part of the contract which imposes an obligation upon them." *DeGraff v. Am. Linen Co.,* 21 N. Y., 127.

"If a corporation has received money or property or the benefit of services under an *ultra vires* contract, the courts are virtually agreed that it may be compelled to refund the value of that which it has actually received in an action *quasi ex contractu* in a proper case or in a suit for an accounting." Clark Corp., 177. See *Bank v. L. Co.,* 123 N. C., 26; *Trustees v. Realty Co.,* 134 N. C., 48.

In *Hutchins v. Bank,* 128 N. C., 73, approved in *Victor v. Mills,* 148 N. C., 111, the Court quotes the same doctrine as announced by the highest authorities, as follows: "In *R. R. v. McCarthy,* 96 U. S., 267, it is said: 'The doctrine of *ultra vires,* when invoked for or against a corporation, should not be allowed to prevail where it would defeat the ends of justice or work a legal wrong,' citing several cases. And in *Board of Agriculture v. R. R.,* 47 Ind., 407, 'Although there may be a defect of power in the corporation to make a contract, yet if a contract made by it is not in violation of its charter or of any statute prohibiting it, and the corporation has by its promise induced a party relying on the promise and in execution of the contract to expend money and perform his part thereof, the corporation is liable on the contract.' In *R. R. v. Trans. Co.,* 83 Pa. St., 160, 'Where a corporation has entered into a contract which has been fully executed on the other part, and nothing remains for it to do but to pay the consideration promised, it will not be allowed to set up the plea of *ultra vires.*' To same purport, 5 Thomp. Corp., sec. 6024, and cases cited."

We are, therefore, of opinion the judgment must be

Affirmed.