L. A. LENTZ, RECEIVER OF THE COMMERCIAL NATIONAL BANK OF RALEIGH, v. K. B. JOHNSON & SONS, INC.

(Filed 28 January, 1935.)

1. **Bills and Notes A a—**

   While the execution and delivery of a note under seal raises the presumption of consideration, such presumption is rebuttable as against any person not a holder in due course. C. S., 3008.

2. **Same: Bills and Notes H b—Evidence of failure of consideration held for jury in this case.**

   The receiver of the payee of a promissory note under seal brought action thereon against the corporate maker. Defendant introduced evidence that its president signed the note for the accommodation of the payee bank, the note being used to cover an indebtedness due the bank by the brother of the president of defendant corporation in order that the bank's records should not show the total amount loaned to the president's brother, and that defendant corporation received no benefit from the transaction, and that the payee bank paid nothing for the note: *Held*, the evidence of failure of consideration was competent and should have been submitted to the jury, and a directed verdict in plaintiff's favor was error.

**3. Corporations G c—Corporation held entitled to show that its president was without authority to execute corporate note under facts of this case.**

The corporate maker of a note may escape liability thereon on the plea of *ultra vires* upon a showing that the execution of the note by its president was not in pursuance of its corporate business, or incident thereto, and was wholly without consideration or benefit to the corporation to the knowledge of the payee. *White v. Johnson & Sons, Inc.*, 205 N. C., 773, distinguished in that the evidence in that case showed consideration to the corporation.

**4. Appeal and Error B b—**

Where a theory of the case argued on appeal is not supported by allegations in the pleadings, it will not be considered on appeal.

CIVIL ACTION, before *Grady, J.,* at Second June Term, 1934, of WAKE.

The plaintiff is the receiver of the Commercial National Bank of Raleigh. Among the assets of the bank were found two notes, payable to the bank and executed by the defendant corporation. One note for $3,000 was dated 15 November, 1931, payable to the Commercial National Bank, and the other was a note executed by the defendant on 13 July, 1931, for $7,581.69, payable to said bank. The defendant alleged and offered evidence tending to show that the Coastal Land and Timber Company, a corporation, owed the bank a large amount of money, evidenced by various notes, including a $3,000 note and a note for $7,412.50. It was admitted that Mr. E. B. Crow was vice-president and active manager of the Commercial National Bank.

K. B. Johnson, president of defendant corporation, testified: "The Hanover Land and Timber Company and the Coastal Land and Timber Company were two corporations. My brother, J. Beal Johnson, owed the bank considerable money—several notes—and on account of the several notes in the bank with their names on them, Mr. Crow asked me to sign this as K. B. Johnson & Sons, Inc., in order to relieve the bank of so many signatures on notes bearing the same signatures. I told Mr. Crow that we did not owe the bank anything, of course, and had never borrowed a dollar from them; that K. B. Johnson & Sons, Inc., had not. He insisted that it be done as a matter of form to keep the bank's notes in better shape with the bank examiners. He said there were too many notes with the same signatures. I reluctantly signed this way just to suit them. K. B. Johnson & Sons, Inc., had no liability or obligation with respect to either of those two corporations. . . . That note there represented the interest upon past-due notes at the Commercial National Bank by the Hanover Land and Timber Company and the Coastal Land and Timber Company. I had no authority from the corporation, K. B. Johnson & Sons, Inc., to execute the notes which you hold in your hands. . . . Mr. Crow, the active manager of the

bank, had knowledge of the fact that K. B. Johnson & Sons, Inc., had no obligation with respect to the notes of Hanover Land and Timber Company and Coastal Land and Timber Company. He knew all about that. . . . It was understood that we could not pay the notes. We did not owe them and could not pay them, but he (Mr. Crow) said: 'We want it this way to make it look better in the bank.' . . . Mr. Crow asked me to sign a note by K. B. Johnson & Sons, Inc., to cover the past-due interest on those notes. He said the bank examiners were fussing about it and it gave them a bad standing to have notes past due. I told him, as I did before, that K. B. Johnson & Sons, Inc., owed no notes and could not pay any. He said: 'Well, just sign them this way anyhow to take care of the bank situation.' I signed them reluctantly that way. . . . K. B. Johnson & Sons, Inc., did not derive any benefit from this note."

There was evidence tending to show that K. B. Johnson, president of defendant corporation, paid to the bank, on 15 December, 1931, the sum of $15.00 interest on the $3,000 note. This payment was enclosed in a letter to the bank, reading as follows: "I herewith enclose check for $15.00 to cover interest on our note for $3,000 for thirty days. Very respectfully, K. B. Johnson & Sons, Inc." There was evidence that, while this check was issued by the corporation, it was charged to the personal account of K. B. Johnson, president thereof.

The following issues were submitted to the jury:

1. "What amount, if anything, is due plaintiff on account of the note for $3,000, dated 15 November, 1931?" ·

2. "What amount, if anything, is due plaintiff on account of the note for $7,581.69, dated 13 July, 1931?"

3. "Is the defendant entitled to be relieved and discharged from liability on said two notes, or either one of them, because of the matters and things alleged in the answer?"

The trial judge directed the jury to answer the first issue, "$3,000, with interest from 15 November, 1931," etc.; the second issue, "$7,581.69, with interest," etc.; and the third issue "No."

From judgment upon the verdict the defendant appealed.

*Briggs & West for plaintiff.*

*A. J. Fletcher, Douglass & Douglass, and Clyde A. Douglass for defendant.*

BROGDEN, J. The two decisive questions of law presented are:

1. If the president of a corporation executes a promissory note in the name of the corporation, payable to a bank, and delivers same to said payee at the request and for the accommodation of said payee, without

the knowledge or authority of the officers or directors of the maker, can such maker in a suit by the receiver of the payee assert failure of consideration as a valid defense to the action?

2. Was such execution and delivery of the instrument an *ultra vires* act?

The statute, C. S., 3008, provides that failure of consideration is a valid defense to a negotiable instrument "against any person not a holder in due course," etc. While, of course, there is a presumption of consideration arising from the execution and delivery of a sealed instrument, such presumption is rebuttable. *Farrington v. McNeill,* 174 N. C., 420, 93 S. E., 957; *Patterson v. Fuller,* 203 N. C., 788, 167 S. E., 74.

The defendant offered evidence tending to show that the notes in controversy were executed and delivered by him as president of the defendant corporation and in the name of the corporation, at the request of the Commercial National Bank, the payee named in the notes. The evidence further tended to show that the bank paid nothing for the note, and that the maker received no valuable consideration as contemplated by law. Consequently, if the jury should find the facts to be as contended by the defendant, the defense of failure of consideration would be available. Manifestly, there was competent evidence of failure of consideration to be submitted to a jury. Therefore, the first question of law must be answered in the affirmative.

The second question of law depends upon pertinent facts and circumstances. If it shall be found that the notes executed by the president of defendant corporation, not in pursuance of or as an incident of the corporate business, wholly without consideration, or benefit of any kind to the corporation, then such execution and delivery of the notes would be an *ultra vires* act. See *Bank v. Odom,* 188 N. C., 672, 125 S. E., 394; *Commissioners of Brunswick v. Bank,* 196 N. C., 198, 145 S. E., 227; *Indemnity Co. v. Perry,* 198 N. C., 286, 157 S. E., 629.

There is no allegation in the pleadings that the payment of $15.00 interest on the $3,000 note constituted ratification, and therefore such question is not pertinent to the case as now constituted.

Apparently the plaintiff relied upon the case of *White v. Johnson,* 205 N. C., 773, 172 S. E., 370. In that case, however, the evidence tended to show that the plaintiff loaned the defendant the sum of $2,000 in cash. Obviously, nothing else appearing, the defendant received the benefit of the contract, and the plea of *ultra vires* was, therefore, not available.

The Court concludes that there was competent evidence of a valid defense to the instruments to be considered by the jury; and hence the peremptory instructions were erroneously given.

Reversed.